**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO.: _____

**PHILIP W. WYERS, individually**

     **Plaintiff,**

v.

**CEQUENT PERFOMANCE PRODUCTS, INC.**

     **Defendant**.

---

**COMPLAINT AND JURY DEMAND**

---

     Plaintiff, Philip W. Wyers, by and through his attorneys, LATHROP & GAGE, LLP, for his Complaint and Jury Demand, allege the following information on belief:

**JURISDICTION AND VENUE**

     1.     This action arises under the patent laws of the United States of America, 35 U.S.C. § 271, for infringement of patents granted by the United States Patent Office.

     2.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and § 1338(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b).

**PARTIES**

     3.     Philip W. Wyers is a resident of the state of Colorado with the professional address of 6770 S. Dawson Circle, Suite 200, Centennial, Colorado, 80112.

4.     Philip W. Wyers is the owner and President of Wyers Products Group ("Wyers Products"), which is a Colorado corporation having its principal place of business at 6770 S. Dawson Circle, Suite 200, Centennial, Colorado, 80112.

5.     Philip W. Wyers is the inventor listed on the patents identified in this Complaint and they have been exclusively assigned to Wyers Products.

6.     Defendant Cequent Performance Products is a division of TriMas Corporation and the infringing products outlined in this lawsuit are sold under the trade name of Reese.   Defendant Cequent has its principal place of business at 47912 Halyard Drive, Suite, 100, Plymouth, MI 48170.

7.     Cequent does business within the state of Colorado on a regular and continued basis under the trade name Reese.  The Defendants will be referred to in the Complaint, from here forward, by the name "Reece."

## GENERAL ALLEGATIONS

8.     Since the 1950s, automotive manufacturers have sold vehicles bearing "receiver boxes" for towing.  Towing accessories, including hitch bars, bike racks, bar-b-ques, luggage carriers, etc, have been made to fit Class II and Class III/IV "receiver boxes".

9.     The automotive industry has adopted two classes of receiver boxes: the Class II category for light towing (up to 5000lbs) and the Class III/IV category for heavy towing (10,000 lbs and greater).  A receiver pin or lock has to bear the towing load as it sits between the four aligned apertures of the tow bar and receiver box.  A receiver pin or lock must also sustain shear loads (inversely directed mechanical forces applied by

2

the towing bar and receiver box that act to severe the shank) triple that of the towing load.

10.    Since the introduction of receiver boxes, manufacturers, wholesalers, retailers and end consumers have utilized Class II receiver pins/locks with Class II towing systems and Class III/IV receiver pins/locks for Class III/IV towing systems.  No receiver pin or lock was offered that could operate successfully and safely in both environments. It was well-known that the receiver pins in one category cannot operate in the other towing category.  Class III/IV pins/locks simply could not fit Class II towing systems and Class II receiver pins/locks could not safely bear the towing or shear loads of a Class III/IV towing system.

11.    Reese sells Class II towing systems and instructs its customers, pursuant to industry standards, that the weight limit for said system is 5000 lbs.  Industry standards require that the Class II receiver pin/lock tolerate up to 15,000 lbs in shear load during active towing.  Reese instructs customers that it cannot use Class III/IV receiver pins/locks with Class II towing systems.

12.    Reese sells Class III/IV towing systems and instructs its customers that a Class III/IV towing system has a towing limit of 10,000 lbs.  Industry standards require that the Class III/IV receiver pin/lock tolerate 30,000 lbs in shear load during active towing.  Reese sells Class III/IV towing systems that meet these requirements. Reese instructs customers that it cannot use Class II receiver pins/locks with Class III/IV towing systems.

20405227v1

13.     Theft of trailers from jobsites, front yards, docks and off the street is a problem that has plagued the owners of trailers for decades.  Coupler locks have been offered by a number of manufacturers that attempt to frustrate a thief's attempt to drive off with an unguarded, free standing trailer.  Few lock designers or lock manufacturers have been truly successful at preventing the clever thief from making off with a trailer until the "unattended coupler lock" was disclosed by Mr. Wyers.

14.     Today, and over the past decade, Reese has sold towing products and accessories through wholesalers and jobbers.  Reese's products are also sold direct to consumer through the Internet via www.amazon.com and other similar Internet retailers.  Reese's catalogue of products, featuring the accused products herein, can be downloaded at www.Reeseprod.com, and is incorporated herein by reference.

15.     Wyers Products is a manufacturer and distributor of a variety of locking devices particularly directed to the trailer hitch industry.  Its product line can be viewed at www.trimaxlocks.com.

16.     Wyers Products sells its products through national retail stores and specialty stores throughout the United States and has achieved an international reputation based upon the quality and innovation of its products.

17.     On or about April 24, 2000, Philip W. Wyers filed a patent application, serial number 09\556637, entitled "Locking Device with Convertible Shank" in the United States Patent and Trademark Office.  This application was published on June 20, 2002, as U.S. 2002\0073746, and it matured to issue as United States Letters Patent number 6,672,115-B2 on January 6, 2004 (the "'115 Patent").  A true and correct copy of the

'115 Patent is attached hereto as **Exhibit A**.  Without limiting the scope of Claims 23

and 27, and by way of illustration only, one of the embodiments of the '115 patent is

depicted as follows:



<u>**Figure 1:**</u>     Illustrations from the '115 patent.

        18.     On March 13, 2002, Philip W. Wyers filed a provisional application number

60\363,999 entitled "Locking Device for Trailer Hitches and a Method Thereof" in the

United States Patent and Trademark Office.  This application was published on July 15,

2004, under serial number U.S. 2004\0134242 A1.  This application matured to issue as

United States Letters Patent number 7,121,121 D2 on October 17, 2006 (the "'121

Patent").  A true and correct copy of the '121 Patent is attached hereto as **Exhibit B**.

This application was filed under application number 10\451,928.  Without limiting the

scope of Claims 5 and 7, and by way of illustration only, one of the embodiments of the

'121 patent is depicted as follows:



**Figure 2**:     Illustration from the '121 patent.

19.     Claim 23 and 27 of the '115 Patent disclose an apparatus for creating a single towing lock that operates as the load bearing structure in two different towing systems, currently the Class II system and the Class III/IV system as discussed above.

20.     Wyers Products has marketed locking devices in the form of the convertible shank under patent application serial number 09\556,637 and, after issue, under the '115 Patent.  These receiver locks are sold, for example, under the name Trimax Model TS32.  At all times subsequent to the filing of the subject application, Wyers Products has properly marked the Wyers receiver locks with the notice of patent pending when applicable or the United States patent number.

21.     Wyers Products has marketed locking devices in the form of the unattended coupler lock under patent application serial number 10\451,928 and, after issue, under the '121 Patent.  These unattended coupler locks are sold, for example, under the name Trimax Model UMAX50 and UMAX100.  At all times subsequent to the filing of the subject application, Wyers Products has properly marked the Wyers receiver locks with the notice of patent pending when applicable or the United States patent number.

6

**FIRST CLAIM FOR RELIEF**
**(INFRINGEMENT OF U.S. PATENT 6,672,115)**

22.     This is a claim against Reese for patent infringement and inducement of

patent infringement under 35 U.S.C. § 271.   Plaintiff re-alleges and adopts by reference

the allegations set forth in paragraphs 1 through 21 of the Complaint above.

23.     Since at least October 1, 2006, Reese has been marketing Class II and

Class III/IV towing systems that feature all of the claim limitation found in Claims 23 and

27 of the '115 patent.   The accused products include locking devices sold under Reese

product numbers 63234, 70101, 70056, 70093, 70107 and 70316, among others.   The

following depicts one of many commercial embodiments Reese has manufactured,

marketed, imported, and sold in the United States:



Class II Receiver & tow bar        Universal Receiver Lock        Class III/IV Receiver &

tow bar

<u>**Figure 3**</u>**: The Reese Towing Systems**

24.     Figure 3 demonstrates how Reese instructs its customers to use the

Universal Coupler lock with the two towing systems that it offers with different load

bearing capacities.

25. As outlined below, Reese's towing systems literally infringe Claims 23 and 27 of the '115 patent or do so under the doctrine of equivalents:

| United States Patent Number 6,672,115 | Infringement |
| --- | --- |
| 23. A locking hitch pin system comprising: | Yes. |
| a) a first hitch bar and a first hitch receiver, said first hitch bar and said first hitch receiver each including first apertures of a first size disposed therein and aligned for registration with one another; | Yes. By way of example, Reese Product Number 21901 and Reese Part Number 06003 meet this limitation. |
| b) a second hitch bar and second hitch receiver, said second hitch bar and second hitch receiver each including second apertures of a first size disposed therein and aligned for registration with one another said first apertures being smaller than said second apertures; | Yes. By way of example, Reese Product Number 21792 and Reese Part Number 37041 meet this requirement. |
| c) a convertible hitch pin including | Yes. By way of example, Product Numbers 70067, 70390 and 70101 are convertible hitch pins. |
| 1) a hitch pin shank having first and second ends and a shank outer dimension size and adapted for closed fitted engagement with the first apertures; | Yes. By way of example, Product Numbers 70390 and 70101 are designed with a shank having an "outer dimension size and adapted for close fitted engagement with the first apertures" of Product Number 21901 and Part Number 06003. |
| 2) a latch portion disposed at said first end; | Yes. |
| 3) a stop member disposed at said second end; | Yes. |

| | |
|---|---|
| 4) a sleeve for selective engagement with said pin shank and having an outer dimension sized and adapted for closed fitted engagement with the second apertures and | Yes. By way of example, the sleeve of Reese Product Numbers 70390 and 70101 is removable for "selective engagement with said pin shank." The sleeve has an "outer dimension sized and adapted for close fitted engagement with the second apertures" of Product Number 21792 and Product Number 37041. |
| d) a locking head member moveable between locked and unlocked states a configured for selective engagement with said latch portion. | Yes. |
| 27. A locking device according to claim 24 wherein said length of said shank and the sleeve length are substantially the same. | Yes. In all instances, the Reese universal receiver locks feature a sleeve that is the same length as the shank. |

26.     Claim 23 and 27 of the '115 patent are presumed valid and enforceable unless and until a challenger presents clear and convincing evidence that said claims are invalid.

27.     In March of 2009, a jury of nine found that Master Lock Company had failed to present clear and convincing evidence to invalidate Claims 15, 19, 21 or 24 of the '115 Patent.  The jury awarded Wyers $5.35 million based upon a 24% royalty on all past and future sales of infringing products.  The Honorable Judge Lewis T. Babcock denied Master Lock Company's Motion for Judgment as a Matter of Law on the question of whether these claims of the '115 patent are obvious under 35 USC Section

103. In so ruling, Judge Babcock rejected Master Lock's attempt to rely upon United States Patent 3,963,264 or the "Down Patent" for purposes of obviousness as no evidence was presented at trial establishing the relevance of the Down Patent.  None of Master Locks' witnesses referenced the Down Patent during trial.   In July of 2010, the United States Court of Appeals for the Federal Circuit ("CAFC") invalidated Claims 15, 19, 21 and 24 of the '115 Patent as obvious.  The three judge panel cited to a motivation to combine standard receiver locks with the Down Patent, despite the fact that no evidence was presented at trial establishing a motivation to combine the Down Patent with receiver locks to achieve Claims 15, 19, 21 or 24 of the '115 Patent.

28.     Claims 23 and 27 of the '115 are patentably distinct claims that maintain a presumption of validity.  Claims 23 and 27 were not previously litigated.  Claims 23 and 27 contain claim limitations that are not present in Claims 15, 19, 21 and 24 of the '115 patent.  As a result, the CAFC's opinion regarding Claims 15, 19, 21 and 24 does not preclude Wyers from asserting Claims 23 and 27 against Cequent.  The CAFC's opinion does not relieve Cequent of its burden of independently establishing that Claims 23 and 27 are invalid by clear and convincing evidence presented to a judge or jury.

29.     Reese has induced others to infringe Claims 23 and 27 of the '115 Patent by selling and/or offering for sale the Reese convertible shank locks and the Reese convertible shank locks sold with Reese hitch systems.  Reese has been aware of the '115 patent since its issuance in 2004 and has intentionally induced others to infringe Claims 23 and 27 of the '115 patent.  Reese has encouraged consumers to infringe these claims by offering each of the component parts of Claims 23 and 27 and providing

instructions to the consumer on the use of these parts for purposes of infringing these claims.

30.     As a result of these infringements, Plaintiff has suffered monetary damages in an amount to be determined at trial.  Plaintiff specifically avers a loss of profits due to Reese's direct competition through the use of this patented technology.

31.     As a result of these continuing infringements, Plaintiff has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. Injunctive relief will, therefore, be sought.  Plaintiff will seek recovery of lost profits and/or the recovery of a reasonable royalty.

32.     The infringing acts of Reese have been willful and wanton and are in reckless disregard of Plaintiff's rights, entitling Plaintiff to trebeling of its damages under 35 U.S.C. § 284 for the infringements and the making of an exceptional case under 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF
## (INFRINGEMENT OF U.S. PATENT 7,121,121)

33.     This is a claim made against Reese for patent infringement and inducement of patent infringement under 35 U.S.C. § 271.  Plaintiff re-alleges and adopts by reference the allegations set forth in paragraphs 1 through 32 of the Complaint above.

34.     Reese has sold its Universal Coupler Lock for the past six years through regional and national retailers, including Internet retailers.  The following is the commercial embodiment of the accused product offered by Reese nationwide:

20405227v1



**Figure 4**:     Reese Embodiement of the '121 patent.

35.     Reese obtained US Patent 6,722,686 and marks the Universal Coupler Lock with this patent number.  The '686 patent, however, reads entirely upon Claims 5 and 7 of the '121 patent.  Neither of these claims were considered by the United States Patent Office before it issued the '686 patent.

36.     The '121 patent has priority over the '686 patent by virtue of earlier filing and conception.

37.     As the '121 patent has priority over the '686 patent, the Universal Coupler Lock infringes the '121 patent as set forth below:

| United States Patent No. 7, 121,121 | Infringement |
|---|---|
| 5.    A locking device adapted to secure to a coupler section of a trailer that has a hitch ball recess, comprising: | |
| (A) a lock housing including a hitch ball element supported thereby that is sized and adapted to be engaged with and disengaged from the hitch ball recess of a coupler section of a trailer, wherein said lock housing includes a body portion having a longitudinal throughway extending therethrough and a traverse bore intersecting | Yes.    Reese Product numbers 72783 and 70147 feature each of the claimed elements. |

12

| | |
|---|---|
| the throughway with said hitch ball oriented generally orthogonally to the throughway and to the bore, and including an elongated tubular casing disposed in the throughway; | |
| (B) a shackle member releasably securable to said lock housing to define a retain state, said shackle member a bridge portion that extends across said hitch ball element when in a retain state whereby said coupler section becomes non-removeably trapped between said hitch ball element and said bridge section when in retain state, said shackle member releasable from said lock housing to define a release state wherein said coupler section can be released from said hitch ball element; and | Yes.   Reese   Product numbers 72783 and 70147 feature each of the claim elements. |
| (C) a selectively lockable latch assembly disposed in and integral with said lock housing and operative to move between a latch state wherein said shackle member is latched in retain state and an unlatch state wherein said shackle member may be moved to the release state. | Yes.   Reese   Product numbers 72783 and 70147 feature each of the claim elements. |
| 7. A locking device according to claim 5 wherein said shackle member includes at least one leg section supporting said bridge section and having a latch structure thereon, said casing including an exposed portion that projects exteriorly of said body portion and having a passageway formed therein sized to receive said leg section when in the retain state, said latch assembly operative to engage said latch structure when in the latch state to prevent removal of said leg section from said casing. | Yes.   Reese   Product numbers 72783 and 70147 feature each of the claim elements. |

38.    Claim 5 and 7 of the '121 patent are presumed valid and enforceable unless and until a challenger presents clear and convincing evidence that said claims are invalid.

39.    The Reese universal coupler locks directly compete with Plaintiff's unattended coupler locks.  More specifically, the Reese universal coupler locks are sold at local, regional and national retailers, customers that traditionally Plaintiff has sold

products.  Due to Reese's direct competition and use of the patented features, Reese has directly injured Plaintiff's ability to make sales.   As a result, Plaintiff's will seek recovery of lost profits and at a minimum, a reasonable royalty.

40.     Upon information and belief, Reese has used the universal coupler lock in a manner that directly infringes the '121 Patent or otherwise infringes the '121 Patent under the doctrine of equivalence.

41.      As a result of these continuing infringements, Plaintiff has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. Injunctive relief will, therefore, be requested.  The infringing acts of Reese have been willful and wanton and are in reckless disregard of Plaintiffs' rights entitling Plaintiff to trebeling of its damages under 35 U.S.C. § 284 for the infringements and the making of an exceptional case under 35 U.S.C. § 285.

**WHEREFORE,** Plaintiff Philip W. Wyers, request:

A.     That this Court enter a permanent injunction against Defendant Cequent and its officers, agents, servants, employees, successors and assigns, and all holding with, through and under them or acting in their behalf enjoining them from:

(i)      infringing and inducing others to infringe Claims 23 and 27 of U.S. Patent number 6,072,115;

(ii)     infringing and inducing others to infringe claims 5 and 7 of U.S. Patent number 7,121,121;

B.     That Defendant Reese be required to account for its sales of products that infringe the '115 Patent and the '121 Patent.   Plaintiff shall be awarded monetary

14

damages from Reese in the amount equal to or greater than Plaintiff's lost profits or a reasonable royalty under 35 U.S.C. § 284 and that these damages be trebeled pursuant to U.S.C. § 284.

      C.     That Plaintiff be awarded its reasonable attorney fees under 35 U.S.C. § 285.

      D.     That this Court award Plaintiff its costs and disbursements in this action including its expert witness fees.

      E.     That this Court award Plaintiff interest including pre-judgment interest and other such interest and relief as the Court may deem just and proper.

      F.     Plaintiff demands a trial by jury.

Dated this 2nd day of July, 2013.

LATHROP & GAGE, LLP

By:    s/Aaron P. Bradford
        Aaron P. Bradford, No. 31115

**Attorneys for Plaintiff Philip W. Wyers**

Plaintiff's Address:
6770 S. Dawson Circle, Suite 200
Centennial, Colorado, 80112

20405227v1